Jeremy C. Sink (9916)
**KIRTON MCCONKIE**
36 South State Street, Suite 1900
Salt Lake City, UT 84111
Telephone: (801) 239-3157
Email: jsink@kmclaw.com
Attorneys for Creditor: Auntie Tut Trust

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In re:<br><br>LORENZO LUCIANO LOPEZ<br><br>Debtor. | Bankruptcy No. 24-26705<br>(Chapter 13)<br><br>Judge: Joel T. Marker<br>**[Filed Electronically]** |
|---|---|

**MOTION TO DISMISS PURSUANT TO 11 U.S.C. 707 and MOTION FOR POST BANKRUPTCY RELIEF FROM THE AUTOMATIC STAY**

Secured creditor Auntie Tut Trust ("ATT") has been seeking to foreclose its first position lien against certain real property located at 13887 Lamont Lowell Circle, Herriman, UT 84096 (hereinafter "Property") in Salt Lake County, Utah for over a year. The Property is listed as the Debtor's mailing address and was transferred to the Debtor via Quit Claim Deed, as a tenant in common, 27 minutes before this bankruptcy case was filed.

As set forth in detail below, the above-captioned bankruptcy is a fraudulent bankruptcy filing completed for the sole purpose of stopping ATT's foreclosure of the

-1-

Property and should be dismissed as a bad faith bankruptcy filing pursuant to 11 U.S.C. § 707(b)(3).

ATT, through undersigned counsel, additionally moves the Court for entry of an order pursuant to 11 U.S.C. § 362(d)(1) and (4), Bankruptcy Rules 4001(a) and 9014, and Local Bankruptcy Rule 4001-1, granting ATT relief from the automatic stay (i) to take appropriate action to protect ATT's first lien position in the real property (ii) to exercise rights and remedies under the Loan Documents (as defined below) and applicable state law, (iii) finding that cause exists for relief from the automatic stay, and for waiver of the 14-day stay period under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure; and (iv) finding that the Debtor's current bankruptcy case is part of a scheme to hinder, delay and defraud ATT.

## STATEMENT OF MATERIAL FACTS

A. Auntie Tut Trust entered into a Secured Promissory Note agreement with John Darger ("Darger") on July 1, 2013 for the principal amount of $320,000. A copy of the Secured Promissory Note is attached hereto as Exhibit A and incorporated herein by reference.

B. A Trust Deed securing the promissory note was recorded with the Salt Lake County Recorder's office as entry number 11676867 on July 2, 2013. A copy of the Trust Deed is attached hereto as Exhibit B and incorporated herein by reference.

C. The property securing the Trust Deed is located at 13887 S. Lamont Lowell Circle, Herriman, Utah (hereinafter the "Property"). See Exhibits A and B.

D. The Property was placed in Mr. Darger's name via Warranty Deed, entry number 11676835 in the Salt Lake County Recorder's Office, on July 2, 2013. See Exhibit C

E. On August 22, 2013 Darger transferred the Property via Warranty Deed, entry number 11710288 in the Salt Lake County Recorder's Office, to Ultimate Estates, LLC.  See Exhibit D.

F. On October 10, 2018, Ultimate Estates, LLC, transferred the Property to Ultimate Enterprise, LLC via Warranty Deed, entry number 12865345, recorded in the Salt Lake County Recorder's Office, signed by John Darger on behalf of Ultimate Estates.  See Exhibit E.

G. On December 30, 2024, 27 minutes before the filing of the above-captioned bankruptcy proceeding, Ultimate Enterprise, LLC transferred the property to Ultimate Enterprise, LLC and Lorenzo Luciano Lopez, as tenants in Commons, via Quit Claim Deed, entry number 14330423, recorded in the Salt Lake County Recorder's Office.  John Darger signed the December 30, 2024 quit claim deed as the Managing Member of Ultimate Enterprise, LLC.  See Exhibit F.

H. Mr. Darger's payment history on the Promissory Note has been less than stellar.  Only four payments have been made on the Promissory Note over the past five years: 1) a payment of $1,000 on 6/4/021; 2) a payment of $1,000 on 7/9/2021; 3) a payment of $500 on 11/15/2022 and 4) a payment of $500 on January 1, 2023.  A copy of Mr. Darger's payment history is attached hereto as Exhibit G and incorporated herein by reference.

I. Pursuant to the plain language of the promissory note, Mr. Darger was supposed to make monthly payments of $1,915.82.  See Exhibit A.

J. Johnathan Ryan Darger filed a prior chapter 13 case in the United States Bankruptcy Court for the District of Utah on January 29, 2024, case number 24-20354. See Docket for case number 24-20354.

K. Mr. Darger's prior bankruptcy case was filed on the eve of ATT's foreclosure sale for the Property scheduled to occur on January 30, 2024. See Proof of Publication of Trustee's Sale Notice from the Salt Lake Tribune attached hereto as Exhibit H and incorporated herein by reference.

L. Mr. Darger's prior bankruptcy case was dismissed for among other things failure to comply with the Bankruptcy Code and failure to comply with an order from the Bankruptcy Court. See Docket entries 15 and 19 in case number 24-20354.

M. Mr. Darger filed a second Chapter 13 bankruptcy case on June 4, 2024, case number 24-22721 in the United States Bankruptcy Court for the District of Utah. See docket for case number 24-22721.

N. Mr. Darger's second chapter 13 bankruptcy case filed during the 2024 calendar year was filed on the eve of ATT's foreclosure sale for the Property scheduled to occur on June 5, 2024. See Notice of Trustee's Sale attached hereto as Exhibit I and incorporated herein by reference.

O. Similar to his prior Chapter 13 (case number 24-20354), Darger did not file statements and schedules with his second chapter 13 bankruptcy petition, did not file a plan and did not submit a mailing matrix listing any of his creditors. See dockets for cases 24-20354 and 24-22721.

P. The sole benefit of the prior two bankruptcy filings by Mr. Darger was stopping ATT's collection efforts. See dockets for cases 24-20354 and 24-22721.

Q. The above-captioned bankruptcy case is a continuation of Mr. Darger's efforts to stop ATT's collection efforts against the Property:

R. Johnathan Darger lists himself on www.linkedin.com as the owner of Ultimate Estates, LLC. See printout of John Darger linked in website profile attached hereto as Exhibit J and incorporated herein by reference.

S. The Utah Division of Corporations and Commercial Code shows that the Manager of Ultimate Estates, LLC is Ultimate Enterprise, LLC located at the Property. See printout from the Division of Corporations and Commercial Code attached hereto as Exhibit K and incorporated herein by reference.

T. Ultimate Enterprise, LLC's manager is the Debtor. See printout from the Division of Corporations and Commercial Code attached hereto as Exhibit L and incorporated herein by reference.

U. Darger holds himself out to the public as a specialist in stopping foreclosures. See Exhibit J (stating ""My expertise is in many areas including but not limited to Foreclosure Prevention, . . ."; and showing a license and certification as a foreclosure prevention specialist.).

V. The immediate bankruptcy filing by Mr. Lorenzo Lopez appear to be nothing more than a continuation of efforts to stop ATT's foreclosure against the Property:

  i. Counsel for ATT received notice of the bankruptcy filing by Mr. Lorenzo Lopez via email dated December 31, 2024 and received by Mr. Sink at 10:29 a.m. (30 minutes before the scheduled foreclosure sale). A copy of the December 31, 2024 email is attached hereto as Exhibit M.

ii. An interesting request appears in the December 31, 2024 email from Mr. Lopez. The request is for "the regular monthly post petition mortgage payment on the property loan so I can start making the regular monthly mortgage payment." See Exhibit M.

iii. The above request from Mr. Lopez is interesting because Mr. Lopez is not obligated to pay on the Promissory Note, nor is ATT one of his creditors. See Exhibit A.

iv. Moreover, the request for a post-petition monthly mortgage payment was the same request made by Mr. Darger to Mr. Sink when Mr. Darger filed his second chapter 13 bankruptcy petition. See June 25, 2024 email from Darger to Sink attached hereto as Exhibit N and incorporated herein by reference. See also June 26, 2024 email from Darger to Sink requesting post petition mortgage payment amounts for a second time. The June 26, 2024 email is attached hereto as Exhibit O and incorporated herein by reference.

v. As the notice of the bankruptcy filing was received only 30 minutes before the scheduled foreclosure sale, Mr. Sink attended the foreclosure sale to continue the sale date because of the bankruptcy filing. Mr. Darger and his wife were the only people at the sale. Mr. Darger was aware of the email from Mr. Lopez to Mr. Sink and provided Mr. Sink copies of the attachments on the email (notice of the bankruptcy filing attached hereto as Exhibit P and a copy of the deed transferring the property to Mr. Lopez attached hereto as Exhibit Q). Mr. Lopez was not there. A complete copy of the audio/video recordings of Mr. Darger's conversation with Mr. Sink will be filed with the Cleark of the Bankruptcy Court

      vi.      as the files are too large to attach to this motion and are marked as Exhibit R. Exhibit R is incorporated herein by reference.

      vi.      Mr. Lopez's bankruptcy is identical to the two prior bankruptcies filed by Mr. Darger in that there is no list of creditors, no proposed plan, no statements and schedules and no statement of financial affairs. Compare dockets from all three bankruptcy cases.

      vii.      More importantly, Mr. Lopez's bankruptcy petition, if there even is a Mr. Lopez, was hand-delivered to the bankruptcy court by Johnathan Darger. See Docket Entry dated December 30, 2024 for case number 24-26705.

W. Lopez has made no effort to comply with the requirements of Chapter 13 of the Bankruptcy Code in his chapter 13 filing. He did not file statements and schedules with his petition, did not file a plan with his petition, did not file a list of creditors and did not list his income. See docket for case number 24-26705.

X. A deficiency notice was submitted on December 31, 2024 giving Mr. Lopez until January 13, 2025 to file the missing items. See Docket for case number 24-26705, docket entry no. 6.

Y. Similar to the prior to cases filed by Mr. Darger, ATT expects that Mr. Lopez will not comply with the December 31, 2024 deficiency notice. See docket for case number 24-20354 and 24-22721.

## RELIEF REQUESTED

ATT, through undersigned counsel, moves the Court for entry of an order pursuant to Section 362(d)(1) and (4) of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules

of Bankruptcy Procedure, granting ATT relief from the automatic stay (i) to take appropriate action to protect ATT's lien position in the Property, and/or (ii) to exercise rights and remedies under the Loan Documents and applicable state law, (iii) requests that the Court find that Lopez's chapter 13 filing, combined with Darger's individual chapter 13 cases, have been part of a scheme to delay, hinder or defraud creditors; (iv) requests that the Court find that Darger's chapter 13 filing has been in bad faith; and (v) requests entrance of an order allowing the foreclosure of the Property by ATT to occur within 7 days of the date the order granting relief from the stay is granted or a different date set by the court. Finally, ATT requests for waiver of the 14-day stay period under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure. ATT additionally requests that the above-captioned bankruptcy case be dismissed for bad faith under 11 U.S.C. 707(b)(3).

## ARGUMENT AND AUTHORITIES

ATT is entitled to relief from the automatic stay under Section 362(d)(4) of the Bankruptcy Code.

### A. REQUIREMENTS OF SECTION 362(d)(4) FOR RELIEF FROM THE AUTOMATIC STAY ARE SATISFIED.

Section 362(d)(4) of the Bankruptcy Code provides in relevant part: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either (A) . . .or (B) multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4) (2013).

**(1) Lopez Bankruptcy Is Part of Multiple Bankruptcies Filed by Darger Affecting the Real Property.**

Johnathan Ryan Darger filed a prior chapter 13 case in this court on January 29, 2024, case number 24-20354. See Docket for case number 24-20354 and Docket Entry dated June 5, 2024 in the above-captioned case. Mr. Darger's prior bankruptcy case was filed on the eve of a foreclosure sale for the Property scheduled to occur on January 30, 2024. See Exhibit D. Mr. Darger's prior bankruptcy case was dismissed for among other things failure to comply with the Bankruptcy Code and failure to comply with an order from the Bankruptcy Court. See Docket entries 15 and 19 in case number 24-20354. Similar to his January 30, 2024 Chapter 13 bankruptcy filing in case number 24-20354, Mr. Darger filed a second bankruptcy case on June 4, 2024 to again stop a foreclosure sale. See docket for case number 24-22721. Identical to his first filing, no effort was made to comply with the bankruptcy code and the case was dismissed.

Mr. Darger filed the immediate case (even though he is not an attorney) again on the eve of a foreclosure sale by Auntie Tut Trust. See Exhibit E. See also docket entry dated December 30, 2024 in the above-captioned bankruptcy case indicating that Mr. Johnathan Darger hand-delivered the bankruptcy petition for this case. Similar to Darger's prior Chapter 13 cases, Mr. Lopez in this case did not file statements and schedules with the above-captioned bankruptcy case, did not file a plan and did not submit a mailing matrix listing any of his creditors. Additionally, Mr. Darger attended the foreclosure sale 30 minutes after Mr. Lopez' email to Mr. Sink to make sure the Trustee was aware of Mr. Lopez' bankruptcy and the transfer of the property to Mr. Lopez. Mr. Darger also threatened Mr. Sink with sanctions for potentially violating the automatic stay, even though Mr. Darger is not listed as an owner of the Property and is not the Debtor in the above-captioned case. The constant in the above three bankruptcies

is Mr. Darger and a filing on the eve of a foreclosure sale. Thus, 11 U.S.C. 362(d)(4)(B) is satisfied as the only benefit Darger and Lopez are gaining through these three bankruptcies is the stopping of ATT's foreclosure sale, hindering, delaying and defrauding ATT's collection efforts.

**2) Darger's Bankruptcy Filings are part of a scheme to Hinder Delay and Defraud ATT**

ATT is a creditor with a secured interest in the Property. Darger's bankruptcy filings, including this filing that Mr. Darger hand-delivered to the bankruptcy court, have been part of a scheme to stop ATT from foreclosing.

Additionally, the transfer by Mr. Darger to Mr. Lopez appears to have been done without consideration making it a further separate fraudulent transfer. While that is not before the court, it is a factor in considering the scheme to hinder delay and defraud ATT.

Finally, Mr. Lopez is not obligated on the note. He can't propose a plan to satisfy ATT's outstanding balance because his other creditors would surely object to his funds satisfying Mr. Darger's obligation to ATT. Mr. Darger must be stopped from continuing to hide behind the automatic stay of the bankruptcy code, whether he files a bankruptcy for himself and a bankruptcy for another with the sole purpose to stop a foreclosure sale of his property.

Mr. Darger and his latest victim, Mr. Lopez who unwittingly is arguably committing bankruptcy fraud, have now stopped three separate foreclosure sales scheduled by ATT. Mr. Darger's scheme is clear as he advertises to the world that he is an expert in avoiding foreclosures. See Exhibit J. Mr. Darger's advertisements and history in this bankruptcy court show that he is not filing these cases in good faith, but rather to solely thwart the collection efforts of ATT.

**Bad Faith under 11 U.S.C. 362(d)(4) and 362(d)(1)**

Some courts have also granted relief under 362(d)(4) where the debtor has not commenced his bankruptcy case in good faith. *Laguna Assocs. Ltd. Partnership v. Aetna Casualty & Surety Co.*,

30 F.3d 734, 737 (6th Cir. 1994); *see also Barclays-American/Business Credit, Inc. v. Radio WBHP, Inc.*, 871 F.2d 1023 (11th Cir. 1989). "Cause" under Section 362(d)(1) is not limited to the lack of adequate protection. "Cause" includes instances where the debtor commenced the case in bad faith. *See*, *e.g.*, *J E Livestock, Inc. v. Wells Fargo Bank (In re J E Livestock, Inc.)*, 375 B.R. 892, 897 (B.A.P. 10th Cir. 2007) (noting that "[a]mong the factors to be considered in determining whether the automatic stay should be modified for cause are the good or bad faith of the debtor and the injury to the movant if the stay is not modified"); *Vessa v. Community First Nat'l Bank of Vgillette (In re Vessa)*, Case No. WY-04-012, 2004 Bankr. LEXIS 1755, at *13 (B.A.P. 10th Cir. Nov. 18, 2004) ("'Cause' for modifying or terminating the automatic stay has, therefore, been found to exist when a case is filed in bad faith. Bad faith and, thus, 'cause' may exist when a debtor has acted improperly in some way toward the movant-creditor during the prepetition period and when a petition is filed to thwart foreclosure efforts.").

"Good faith is an amorphous notion, largely defined by factual inquiry." *In re O'Koreeh-Bach*, 836 F.2d 1030, 1033 (6th Cir. 1988). "Although particular cases are of little precedential value, a broad review reveals certain patterns and conduct that have in specific cases been characterized as bad faith" including but not limited to an improper impact on nonbankruptcy rights, inability or refusal to reorganize and serial filings. Collier on Bankruptcy ¶362.07[7][a] (citations omitted).

Lopez's actions scream bad faith. First, he has filed a bankruptcy to stop a foreclosure sale of a property that does not belong to him, for which he is not financially obligated to pay and where he has teamed up with an individual (Mr. Darger) who has a history of abusing the bankruptcy system. Second, Mr. Darger is apparently practicing law if he is filing bankruptcy petitions on behalf of third parties without a license. Third, Mr. Lopez, even if he wants bankruptcy relief, can't include the payment of Mr. Darger's obligations in his Chapter 13 plan. Fourth, Mr.

Lopez isn't the one threatening violation of the automatic stay to ATT, Mr. Darger is. Mr. Darger attended the sale on December 31, not Mr. Lopez. The acting party here is Johnathan Darger. Mr. Lopez's participation is a fraud on this court.

While the modus operandi seems clear, it presents a challenging issue for the court and for Mr. Darger when planning for the future. Assuming this motion is granted, the bankruptcy court will issue an order which "shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order." See 11 U.S.C. 362(d)(4)(B). The challenge for Mr. Darger, if a fourth bankruptcy were filed, would be any attempt to challenge an order arising from this motion. Section 362(d)(4)(B) allows Darger to challenge that order in a subsequent case "based upon changed circumstances or for good cause shown." Given Mr. Darger's repeated refusal to complete statements and schedules his prior to bankruptcy cases and his apparent advice to Mr. Lopez to do the same in this case, it will be difficult if not impossible for Mr. Darger to show that his circumstances have changed or that good cause exists to set aside such an order.

With regard to finding bad faith in this recent bankruptcy filing, 11 U.S.C. 362(c) shifts the burden from ATT to Mr. Lopez, requiring Lopez to show that the case was filed in good faith. Specifically paragraph (c)(3)(C) states that where there are multiple bankruptcy filings in a single calendar year the second "case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)" "Evidence is clear 'if it is certain, unambiguous, and plain to the understanding,' and it is convincing ' if it is reasonable and persuasive enough to cause the trier of facts to believe it.'" *Fost v. Alliedsignal, Inc.*, 293 F.3d 1187, 1194 (10th Cir. 2002)(citation omitted).

**CONCLUSION**

Relief from the automatic stay should be granted under 11 U.S.C. 362(d)(1) and (d)(4). Lopez has filed this bankruptcy case as a pawn in Mr. Darger's schemes, with no intention to comply with the bankruptcy code. The above-captioned case was filed for one reason and one reason only, to hinder delay and defraud ATT. For the reasons set forth herein, ATT requests entry of an order granting the Motion and (i) providing ATT relief from the automatic stay for cause and (ii) authorizing ATT to proceed with recovery and sale of the Property pursuant to Utah State law.

DATED this 31st day of December, 2024.

KIRTON McCONKIE

/s/ Jeremy C. Sink
Jeremy C. Sink

*Attorneys for MGT*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was emailed to the following and filed electronically with the Bankruptcy Court via the court's ECF system on December 31, 2024

- **Lon Jenkins tr**   ecfmail@ch13ut.org, lneebling@ch13ut.org
- **United States Trustee**   USTPRegion19.SK.ECF@usdoj.gov

I hereby further certify that the above motion was mailed to Johnathan Ryan Darger and Lorenzo Lopez at 13887 South Lamont Lowell Circle, Herriman, UT 84096 and emailed to Mr. Darger at jndarger1@gmail.com and emailed to Mr. Lopez at lorenzolucianolopez@gmail.com on the 31st day of December, 2024.

/s/ Margaret Carlson