

John Darger
13887 S Lamont Lowell Cir
Herriman, UT 84096
(801) 671-5942
E-mail: jndarger1@gmail.com
Third Party Intervenor



FILED US Bankruptcy Court-UT
JAN 14 2025 PM2:03

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| In re: | **THIRD PARTY MOTION TO DISQUALIFY COUNSEL** |
|---|---|
| Lorenzo Luciano Lopez | **(HEARING REQUESTED)** |
| Debtor | Case:  24-26705 |
| | Judge: Marker |

Pursuant to FRCP 7 and Rule 3.3 of the Utah Rules of Professional Conduct, Third Party Intervenor John Darger ("Darger"), hereby moves to disqualify attorney Jeremy Sink, as counsel for creditor Auntie Tut Trust.

### BACKGROUND FACTS, RELIEF REQUESTED AND GROUNDS THEREFOR

Darger borrowed $320,000 from creditor Auntie Tut Trust ("ATT"). ATT orchestrated a criminal scheme to steal Darger's equity by refusing to let him modify the loan and assessing illegal compound and default interest. ATT's attorney is now involved in the scheme making it a criminal conspiracy. Darger seeks to disqualify Sink as counsel for his egregious behavior of violating the rules of professional conduct.



## ARGUMENT

This bankruptcy court has ample discretion to determine whether disqualification of counsel is appropriate. Motions to disqualify are governed by two sources of authority. *Rupp v. Transcon. Ins. Co.*, No. 2:07-CV-333-TC-PMW, 2008 WL 2627516, at *1 (D. Utah July 2, 2008)

First, attorneys are bound by the local rules of the court in which they appear. Indeed, attorneys practicing in this court are bound by the Utah Rules of Professional Conduct. Second, because motions to disqualify counsel are substantive motions affecting the rights of the parties the court also applies the standards developed under Utah state and persuasively, federal law by [the Rules of Practice for the United States District Court for the District of Utah], with the Utah Rules of Professional Conduct, as revised and amended and as interpreted by this court.

Because motions to disqualify counsel in state court proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under law. In Utah, this means that both state and federal courts should consider the factors laid out in *Parkinson v. Phonex Corp.*, 857 F. Supp. 1474, 1476 (D. Utah 1994), which are (1) the egregiousness of the violation, (2) the presence or absence of prejudice to the other side, (3) hardship to the other side, (4) whether and to what extent there has been a diminution of effectiveness of counsel, and (5) the stage of trial proceedings. *Id.*

## I.    THE EGREGIOUSNESS OF ATT'T ATTORNEY'S VIOLATION

ATT's attorney is involved in a criminal conspiracy with its client, the Auntie Tut Trust to steal the equity in Darger's property.

### A.    THE CRIMINAL AND CIVIL CONSPIRACY OF AUNTIE TUT TRUST AND JEREMY SINK.

2

The Auntie Tut Trust and their attorney Jeremy Sink are involved in a criminal conspiracy to steal all of Darger's home equity. First, they attempted to charge Darger compound interest in violation of the contract of simple interest. When Darger accused them of misconduct and fraud, they then attempted to charge default interest in violation of the Consumer Financial Protection Bureau rules. The CFPB rules require that the borrower be notified of a default interest rate change. Instead, ATT and Sink have now retroactively assessed default interest without notice. Additionally, the promissory note only allows ATT to collect a final payment after five years

## B.   THE RULES OF THE CFPB ARE ABSOLUTE AND NOT SUBJECT TO INTERPRETATION IN THIS CASE

Lacking any valid case law or federal rules to support their position, ATT and Sink criminally conspired to retroactively assess default interest with the goal of intimidating and deceiving Darger to steal the equity in his house. As such, they violated CFPB Rule 1026.9 among others. The CFPB rules are clear. Changing the interest rate to be a default APR requires 45 days advance notice   Darger does not agree to the default interest rate change. The wrongful assessment of the default APR voids the entire promissory note. Accordingly, Darger owes ATT nothing at this point.

## C.   SINK SHOULD BE DISQUALIFIED FOR CRIMINAL AND CIVIL MISCONDUCT

### 1. SINK VIOLATED RULE 3.3 OF THE UTAH RULES OF PROFESSIONAL CONDUCT.

Sink has willfully violated Rule 3.3 of the Utah Rules of Professional Conduct. Additionally, the *Parkinson* factors weigh in favor of disqualifying Sink as counsel for ATT. Rule 3.3 of the Utah Rules of Professional Conduct requires candor towards the tribunal.

Rule 3.3(a) states, "A lawyer shall not knowingly or recklessly:

(a)(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; or

(a)(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction directly adverse to the position of the client and not disclosed by opposing counsel.

Here, Sink has knowingly and recklessly made a false statement about the law concerning interest that can be charged in this case.

### 2. WRONGFUL FORECLOSURE PIGGYBACKING ON BALLIF NOD

ATT's first attorney Ballif filed his own notice of default on this case. In violation of Utah Code 57-1, Sink attempted to "piggy back" off of Ballif's NOD even though the rules clearly state this isn't allowed. Darger filed a Chapter 13 bankruptcy case to stop this illegal foreclosure. Finally, Sink acknowledge his misconduct by recording his own NOD and starting a new 90 day redemption period even though the redemption amount was fraudulent due to illegal interest assessed.

### 3. WRONGFUL FORECLOSURE NOTICE WITH UNDER 30 DAYS NOTICE

Utah Code 57-1 requires that a foreclosure be published online on UtahLegals.com for 30 days prior to sale. Sink only published the sale for 29 days and refuses to correct his fraud and republish the sale date.

### 4. ATTEMPTED TO VIOLATE BANKRUPTCY AUTOMATIC STAY

4

5.  Sink attempted to violate bankruptcy case law that ruled all assets become property of the bankruptcy estate.  It wasn't until Darger fled a notice of violation of automatic stay that Sink canceled the foreclosure sale.  Sink has repeatedly engaged in fraudulent activity concerning foreclosing on Darger's business property.

6. **SINK FILED FRAUDULENT PROOFS OF CLAIM IN BANKRUPTCY COURT**

Sink has filed fraudulent proofs of claims in bankruptcy court and/or utilized other attorneys to file them for him.  The fraudulent claims illegally assess compound interest or default interest in violation of the contract and/or in violation of the rules of the CFPB.  No matter which fraudulent documents Sink prepared, they are all part of a larger pattern of fraud that he has attempted throughout the foreclosure of Darger's business property.

7. **VIOLATED CPFB RULES INCLUDING RESPA, TILA, REGULATION Z**

CFPB doesn't allow interest changes without notice to borrower.  Darger requested a loan medication, but ATT breached it's promise to modify the loan.  Then ATT violated the CFBP by assessing compound interest in violation of the promissory note.  When Darger advised Sink of the scheme to charge compound interest, ATT and Sink changed the calculation to default interest of 15% retroactively in violation of the rules.

8. **FILED A FRAUDULENT MOTION TO DISMISS**

In the instant bankruptcy case filed by Leonardo Luciano Lopez, Sink filed a fraudulent motion to dismiss for ATT under bankruptcy code 707.  Sink filed the

motion immediately after Lopez filed a Chapter 13 bankruptcy. In violation of bankruptcy rules, Sink failed to give Lopez 14 days to file his schedules and other documents. Sink then seeks in rem relief alleging there is a scheme to hidner, delay or defraud creditor, when it reality the opposite is true. Sink and ATT are orchestrating a scheme to defraud Darger's business and steal the home equity of Darger's business property.

## II. THE THREAT TO THE HONOR OR INTEGRITY OF THE LEGAL PROFESSIONAL WEIGHS IN FAVOR OF DISQUALIFYING ATT'S COUNSEL.

A motion to disqualify can be based on a threat to the honor or integrity of the legal profession or articulated as an appearance of impropriety. See, e.g., Bodily v. Intermountain Health Care Corp., 649 F. Supp. 468, 473-77 (D..Utah 1986) (motion to disqualify law firm for violating Canon prohibiting multiple representation without client's consent after full disclosure). If the primary lawyer (the lawyer who is moving to a new firm) has engaged in one of these acts, the lawyer can be disqualified from participating in certain cases or from representing a certain client for the new firm. Moreover, if the primary lawyer is disqualified, the new firm is frequently tainted by the association and therefore disqualified to the same extent as the primary lawyer. This disqualification is called vicarious disqualification, imputed disqualification, or entity disqualification. C. WOLFRAM, MODERN LEGAL ETHICS 129 (1986)[hereinafter WOLFRAM]. See generally Survey Project, Conflict of Interest: Vicarious Disqualification. 3 OEO. J. LEGAL ETHICS 165, 165-68 (1988)(principles, rules. implications of disqualification discussed).

First, the "egregiousness" of Sink's "violation" is dependent on whether Rule 3.3 was violated. *Rupp*, 2008 WL 2627516, at *3 (egregiousness is relevant if Rule 3.7 is violated). As

6

detailed above, Sink did violate Rule 3.3 of the Utah Rules of Professional Conduct by becoming

a co-conspirator in the fraud. Moreover, Sink's violation of that rule is especially egregious, as

ATT should have admitted key facts related to settlement discussions that eliminate the need for

trial on many issues, streamlining this case and allowing the parties to focus on the few issues that

remain in dispute.

There is no basis in law for ATT and Sink's arguments that they can assess default and

compound interest or any other fraudulent interest they may choose to assess.

As such, the violation is egregious and a criminal attempt to steal Darger's property equity.

Darger and his business certainly will be prejudiced if Sink continues to mislead the

tribunal.

And Sink certainly aren't benefitting his client either. If Sink is successful in conducting

an illegal foreclosure sale the trustee's deed will be a legal nullity and will create grounds for

damages for a wrongful foreclosure claim by Darger.

This case is in the very early stage, which weighs in favor of disqualification. Darger

attempted in good faith to notify Sink of the violations of the rules of professional conduct and

asked Sink to stop foreclosing to avoid the filing this motion.

The first attorney Ballif withdrew because he didn't want to be a part of ATT's fraud. Sink

has no issue being a co-conspirator in ATT's fraud.

## III.    THE ABSENCE OF PREJUDICE TO ATT AND THE EXISTENCE OF PREJUDICE TO DEFENDANTS

There are hundreds of attorneys in Utah trained in real estate law who will be willing to

follow the rules of professional conduct that ATT can hire. Accordingly, there will be no prejudice

to ATT for Sink to be disqualified. In fact, hiring new attorneys might actually benefit ATT

because any orders issued right now under Sink's current legal strategy will be a legal nullity and harmful to ATT.

## IV.    NO HARDSHIP TO ATT

As stated above, there will be no hardship to ATT to find new counsel due to the significant number of real estate attorneys who are willing to follow the rules.

Disqualifying Sink at this stage would not "work substantial hardship" on ATT. And, getting new counsel up to speed would not delay the foreclosure much in this matter if the new counsel properly followed the rules. *See Yanaki v. Daniel*, No. 2:07CV648 DAK, 2009 WL 1325054, at *3 (D. Utah May 6, 2009) (considering the cost of hiring new counsel, the stage of the proceedings, and whether trial dates would be impacted for hardship).

Moreover, among the primary considerations courts analyze for disqualification is the timeliness of the motion. A motion to disqualify counsel must be immediately filed and diligently pursued as soon as the party becomes aware of the basis for disqualification, and it may not be used as a manipulative litigation tactic.

Here, Darger has been diligent in bringing this motion and notifying Sink that he had violated the rules of professional conduct and rules of professionalism and civility. Rather than making any effort to justify his position, Sink simply tells Darger to file motions in court if he disagrees with Sink's action.

Darger has attempted to in good faith to resolve this issue without filing the Motion, but once it became clear disqualification was going to be necessary, he did not wait months or years to file the Motion. *See You Li v. Lewis*, No. 1:20-CV-00012-TS-JCB, 2020 WL 3217268, at *2 (D.

8

Utah June 15, 2020) (finding a three-month delay untimely). Rather, Darger immediately brought this issue before the Court.

## V.     DIMINUTION OF EFFECTIVENESS OF COUNSEL

There has indeed been a diminution of effectiveness of counsel.  In what appears to be a desperate move, Sink is ignoring the CFPB rules to fraudulently assess compound and/or default interest.

## CONCLUSION

For the foregoing reasons, Darger respectfully requests that the Court disqualify ATT's counsel Jeremy Sink as he has conspired with ATT to create an unconscionable scheme to steal the equity in Darger's business property.  Any such orders issued by any court at this time would be void ab initio due to ATT and Sink's fraud.

DATED this 14th day of January, 2025.

_____
John Darger
Third Party Intervenor

## CERTIFICATE OF SERVICE

The undersigned hereby certifies a true and correct copy of the foregoing was served electronically via CM/ECF notification on January 14, 2025 on all parties registered to receive ECF notification including the following parties:

Lon Jenkins
Chapter 13 Trustee
ECF Notification

United States Trustee
ECF Notification

John Darger