```
                IN THE UNITED STATES BANKRUPTCY COURT

                      FOR THE DISTRICT OF UTAH




In re:                        )
                              )
JESSE LUCIANO LOPEZ,          ) Bankruptcy No. 24-26705
                              ) Chapter 13
            Debtor.           )
_____)




              BEFORE THE HONORABLE JOEL T. MARKER

                       January 14, 2025
```

```
APPEARANCES OF COUNSEL:

For Auntie Tut Trust:    Jeremy C. Sink
                         Attorney at Law
                         Kirton McConkie
                         36 South State Street
                         Salt Lake City, Utah 84111

For Chapter 13           Katherine Kang
Trustee:                 Attorney at Law
                         U.S. Trustee's Office
                         405 S. Main Street
                         Suite 300
                         Salt Lake City, Utah 84111
```

```
       Court Reporter:

           Laura W. Robinson, FCRR, RPR, CSR
              351 South West Temple
              3.303 U.S. Courthouse
            Salt Lake City, Utah 84101
                 (801)201-9731
```

```
 1   Salt Lake City, Utah                    January 14, 2025
 2                        * * * * *
 3              THE COURT:  Good afternoon.  We've got one
 4   matter on the 2:00 calendar in the Chapter 13 case of
 5   Lorenzo Lopez, Case No. 24-26705.  Could I get
 6   appearances please starting with the movant?
 7              MR. SINK:  Your Honor, Jeremy Sink of Kirton
 8   McConkie on behalf of creditor Auntie Tut Trust.
 9              THE COURT:  Thank you.  I'll note for the
10   record Mr. Lopez filed his Chapter 13 petition
11   without the assistance of an attorney and he is not
12   making an appearance at this hearing.
13              Go ahead, Mr. Sink.
14              MR. SINK:  Your Honor, this is the time and
15   place set for hearing Auntie Tut's motion for
16   dismissal of this case and for in rem relief for
17   relief from the automatic stay from subsequent
18   bankruptcy filings related to the piece of property
19   that Auntie Tut Trust has a lien against.
20              We've -- I think our pleadings speak pretty
21   plainly as to what has occurred here.  As you know,
22   this is the third bankruptcy that has been filed
23   essentially hours before three consecutive
24   foreclosure sales that my client has attempted to
25   consummate related to this property.
```

3

1          And the disturbing part of this current
2    bankruptcy is noted in our pleadings where the
3    obligor on this note appears to have been the one who
4    hand-delivered the petition to the bankruptcy court
5    for the filing of this immediate case.  We're not
6    sure if Lorenzo Luciano Lopez even exists.  But, the
7    pattern has been shown.
8          We filed a notice of default, we notice up a
9    trustee's sale, and then on the eve of that trustee's
10   sale the bankruptcy is filed.  And under none of
11   those three bankruptcy cases has there been any
12   attempt to seek refuge under the Bankruptcy Code.  No
13   attempt to file statements and schedules.  No attempt
14   to attend a 341 Meeting.  No attempt to essentially
15   propose a Plan of Reorganization.
16         In the immediate case in response to us
17   filing this motion, as you have seen, a motion to
18   dismiss the case was filed.  And we don't have any
19   problems with that motion to dismiss but we think
20   that this court has jurisdiction to enter -- to grant
21   our motion before dismissing this case under Section
22   1307 of the Bankruptcy Code.
23         We believe that the proof is in the pudding
24   here especially given the fact that although a
25   pleading was filed, no debtor appeared today.  Again,

4

1  I have my suspicions that that debtor doesn't exist.
2  I provided to the court a recording of the
3  conversation between me and Mr. Darger at the
4  foreclosure sale at the beginning of this bankruptcy.
5  There was no Mr. Lopez there.  He kept referring me
6  to Mr. Lopez as if he did exist, but he is the one
7  who was there and referenced the e-mail that was
8  allegedly from Mr. Lopez.  He wasn't copied on that
9  e-mail.  I gave you a copy of that e-mail.  All
10 indications are that this bankruptcy was filed by
11 Mr. Darger for the sole purpose of thwarting our
12 collection efforts.
13         We believe that an in rem order is
14 appropriate as to the property prohibiting the -- or
15 essentially making any subsequent bankruptcies not
16 subject to the automatic stay as to this particular
17 piece of property.
18         We think the court can do that.  I have
19 provided two courts in my reply memorandum that I
20 filed today after their objection.  Those two courts
21 are the *In re: Roben* case and another case cited
22 there.  We believe this court does have authority
23 under both Section 362 and Section 105 to enter an in
24 rem order granting us that relief.
25         We believe that the -- what the court did in

5

1    the *In re: Roben* case is appropriate. And that is
2    that once the in rem order is entered, then I would
3    be responsible for recording that order with the Salt
4    Lake County Recorder's Office so as to give any
5    subsequent owners of the property notice of this
6    order that we think is appropriate to be entered.
7    And if the court doesn't have any questions
8    for me, I would submit the rest on the pleadings.
9    THE COURT: Thank you. I see we have an
10   appearance by counsel for the Chapter 13 Trustee.
11   Ms. Kang, do you have anything you wish to say?
12   MS. KANG: No, Your Honor. We don't have
13   any -- none of the schedules or any of the documents
14   relating to petition have been filed or have been
15   provided to us so we don't know what's going on in
16   this particular case. So with that, that's all I
17   have to contribute, Your Honor.
18   THE COURT: Thank you. All right. I'll
19   note at the outset that on a motion for relief under
20   Section 362(d) of the Bankruptcy Code, Section 362(g)
21   provides that at any hearing on a motion for relief
22   under 362(d) the party requesting such relief has a
23   burden of proof on the issue of the debtor's equity
24   in the property which is not an issue in this case.
25   And two, the party opposing such relief has

6

1  a burden of proof on all other issues.
2         Mr. Lopez, again, has not appeared at this
3  hearing --
4         MR. DARGER: I am here, Your Honor. My name
5  is John Darger and I'm a third-party and I filed -- I
6  would like you to grant for me to intervene. I filed
7  papers to intervene.
8         THE COURT: I'm sorry, Mr. Darger, you're
9  not the debtor in this case, correct?
10        MR. DARGER: I have an interest in the
11 property, Your Honor.
12        THE COURT: All right. You're not the
13 debtor in this case and you're not an attorney.
14        MR. DARGER: I'm not a third-party and I
15 filed papers that you will be able to pull up and
16 see.
17        THE COURT: All right. Well, we'll note
18 Mr. Darger's appearance today. As I was saying, the
19 debtor has the burden of proof on all other issues
20 and Mr. Lopez is not here to offer any evidence in
21 support of his objection to the motion.
22        So the matter before me is a motion to
23 dismiss and proposed bankruptcy relief from stay
24 filed by secured creditor Auntie Tut Trust. This
25 case, and I'll take judicial notice of Mr. Darger's

1  prior two cases that I'll describe in a minute, this
2  case is a third in a series of Chapter 13 cases filed
3  over the past 12 months involving real property
4  located at 13887 South Lamont Lowell Circle in
5  Herriman, Utah.
6         The first case, case number 24-20354, was
7  filed by Jonathan Darger on January 29th, 2024, and
8  was dismissed on April 9th, after Mr. Darger failed
9  to file any of the required documents by the court
10 extended deadline of April 5th.  Apart from a list of
11 creditors and a Schedule A/B that listed a potential
12 $1 million wrongful foreclosure slash fraud claim
13 against the movant Auntie Tut Trust but no real
14 property owned by Mr. Darger.
15        Mr. Darger filed a second case on June 4th
16 of 2024, 24-22721, that largely mirrored the first
17 case.  He again filed only a list of creditors and
18 the same Schedule A/B and that case was dismissed on
19 July 25th of 2024 for Mr. Darger's failure to timely
20 file any other required documents.
21        Then, since no stay would go into effect if
22 Mr. Darger filed a third case before January 30th of
23 this year, 2025, instead Mr. Lopez filed the present
24 case 24-26705 about 30 minutes after being
25 quitclaimed the joint interest in the property.

8

1          In this case, Mr. Lopez didn't even bother
2     to file a list of creditors which was due by
3     January 2nd per Federal Bankruptcy Procedure
4     1007(a)(1), and Local Rule 1007-1(b), the latter of
5     which also permits the court to dismiss the case sua
6     sponte if the deadline isn't met.
7          Mr. Lopez also didn't file any of the other
8     documents listed in the court's December 31st
9     deficiency notice.  Those were due yesterday
10    January 13th.  The running theme in all three cases,
11    each of which was filed on the day before a
12    foreclosure sale of the Herriman property, is
13    Mr. Darger's dispute with Auntie Tut which he accuses
14    of malicious and fraudulent conduct to steal the
15    equity in his house largely by calculating balance
16    due based on compound or default interest rather than
17    simple interest.
18         As indicated in the exhibits attached to the
19    movant's motion, this saga began with a 5-year
20    $320,000 note executed by Mr. Darger and Auntie Tut
21    in July of 2013 accompanied by a Deed of Trust for
22    the Herriman property.
23         Mr. Darger then transferred the property by
24    a warranty deed to Ultimate Estates, LLC, in August
25    of 2013.  Ultimate Estates, through Mr. Darger as

1 owner, transferred the property by warranty deed to
2 Ultimate Enterprise, LLC, in October of 2018 and
3 Ultimate Enterprise, through Mr. Darger as manager,
4 quitclaimed its interest to both itself and Mr. Lopez
5 on December 30th of 2024 about 30 minutes before this
6 Chapter 13 case was filed.
7 Mr. Lopez sent an e-mail to Auntie Tut's
8 counsel, Mr. Sink, on December 31st at about
9 30 minutes before the foreclosure sale with an odd
10 request for the post-petition mortgage payment amount
11 which echoed a similar e-mail from Mr. Darger to
12 Mr. Sink in June, although Mr. Lopez has no liability
13 on the note. Only Mr. Darger and his wife attended
14 the foreclosure sale which Mr. Sink postponed to
15 January 24th, 2025, in accordance with Utah Code
16 57-1-27(2)(c) and Mr. Darger apparently declined to
17 discuss his connection with Mr. Lopez at the sale.
18 And Mr. Darger, who hand delivered
19 Mr. Lopez's bankruptcy petition and accompanying
20 documents for filing with the court, holds himself
21 out to be a foreclosure prevention specialist in his
22 LinkedIn profile.
23 Although the motion filed by Auntie Tut is
24 styled as both as a motion to dismiss and motion for
25 stay relief, the stay relief request makes up the

1  bulk of the argument. Auntie Tut asked for both
2  regular stay relief under Section 362(d)(1) for
3  cause, and also for relief under Section 362(d)(4)(B)
4  based on a scheme to delay, hinder, or defraud
5  creditors that involves multiple bankruptcy filings
6  affecting such real property. Which if granted,
7  functions as in rem relief against the property for
8  two years upon proper recording of the court's order.
9           A stay relief motion is a summary
10 proceeding. So at a stay hearing, the court merely
11 determines whether the movant has a colorable claim
12 that is a facially valid security interest. It then
13 should consider whether the objector has raised a
14 colorable defense that is not -- that not merely
15 offsets the movant's claim, but actually would defeat
16 the movant's claim.
17          In this context the bankruptcy court limits
18 its consideration of defenses to those that strike at
19 the heart of the creditor's lien, or that bear on the
20 debtor's equity in the property. And I am referring
21 to the *Utah Aircraft Alliance* case from Judge Thurman
22 reported at 342 B.R. 327. That's from the Tenth
23 Circuit Bankruptcy Appellate Panel, excuse me, 2006.
24          Just before the clerk's office closed
25 yesterday evening, Mr. Lopez filed a motion and

1   proposed order dismissing the case, and an objection
2   to Auntie Tut's motion that raises four arguments.
3           One, the court must dismiss the case
4   immediately under Section 1307(b) before ruling on
5   Auntie Tut's motion.  Two, the court must abstain in
6   favor of the state court's deciding a mortgage
7   dispute.  Three, a request for in rem relief requires
8   an adversary proceeding, according to Mr. Lopez.  And
9   four, Auntie Tut's own conduct regarding mortgage
10  negates any finding of a scheme to hinder, delay, or
11  defraud.
12          And Auntie Tut filed a reply several hours
13  ago.  None of Mr. Lopez's arguments are well taken.
14  Here, it's clear from the record of all three cases
15  that the only purpose for the case is for us to stop
16  the foreclosure sales by Auntie Tut.  Almost no
17  required documents were filed in any of the cases,
18  and no meaningful efforts were undertaken to
19  legitimately prosecute any of the cases.
20          Mr. Lopez's argument that Auntie Tut --
21  Auntie Tut's prompt filing of the motion somehow
22  prevented Mr. Lopez from filing required documents is
23  frivolous and it echoes similar arguments from
24  Mr. Darger in his prior cases as to why he couldn't
25  timely file his own required documents.

1      All three cases were filed on the eve of
2 foreclosure, and Mr. Lopez was a legal stranger to
3 the property until receiving a quitclaimed interest
4 about 30 minutes before he filed his Chapter 13 case
5 which was designed again to get around the fact that
6 Mr. Darger had already exhausted his two automatic
7 stays within the 12-month period under Section
8 362(c), even though he scheduled no real property in
9 either of his cases, having long ago transferred
10 ownership of the Herriman property from himself to
11 Ultimate Estates and then Ultimate Enterprise.
12      The note matured in 2018 but remains unpaid,
13 and no payments of any kind have been made since
14 January of 2023.  And despite the objection's general
15 denials of the motion's factual allegations, mostly
16 for alleged lack of information, the objection is
17 neither verified nor otherwise supported by any facts
18 or documents.
19      Auntie Tut has demonstrated its colorable
20 claim and even Mr. Darger and Mr. Lopez seem to admit
21 that Auntie Tut is a legitimate secured creditor by
22 asking Mr. Sink for ongoing payment amounts despite
23 the disputes about the amounts owed on the mortgage.
24      But this is not the proper forum for
25 addressing those disputes.  And even with in rem stay

13

1   relief, any appropriate party in interest, whether
2   that's Mr. Darger, Mr. Lopez, or Ultimate Enterprise,
3   can pursue any available relief in state court of
4   competent jurisdiction.  Mr. Lopez also says as much
5   in two of the objections for arguments by proposing
6   that the state court system is a proper forum to
7   resolve the party's disputes.  And Mr. Lopez cites to
8   numerous decisions before the Bankruptcy Code was
9   amended in 2005, but no adversary proceeding is
10  required to grant the stay relief contemplated by
11  Section 362(d)(4) which can instead be pursued by a
12  motion as contested matter.  And you can refer to
13  Bankruptcy Rule 7001, the Advisory Committee Notes,
14  and also the cases of *In re: Van Ness, 399 B.R. 897,*
15  and that's from the Bankruptcy Court for the Eastern
16  District of California in 2009.
17          I'll find, accordingly, that this Chapter 7
18  case was filed by Mr. Lopez in bad faith.  And it's
19  part of a scheme involving multiple bankruptcy
20  filings to at least hinder or delay creditors,
21  including Auntie Tut.  So stay relief under both
22  Section 362(d)(1) and Section 362(d)(4)(B) will be
23  granted as will Auntie Tut's request to waive the
24  14-day stay --
25          MR. DARGER:  Your Honor --

```
 1              THE COURT:  -- of Federal Rule 4001(a)(4) to
 2    allow the postponed January 24th foreclosure sale to
 3    go forward if no intervening action is taken at state
 4    court.
 5              Auntie Tut also requested dismissal of the
 6    case under Section 707(b)(3) for bad faith filing,
 7    but that section doesn't apply in this Chapter 13
 8    case.  Having said that, Section 1307(c) includes bad
 9    faith as an unlisted basis for dismissal on top of
10    the court's authority under Local Rule 1007(1)(b) to
11    dismiss the case sua sponte for Mr. Lopez's failure
12    to timely file the list of creditors, and Mr. Lopez
13    has now requested dismissal of the case as well.
14              But even assuming Mr. Lopez's absolute right
15    to dismiss under 1307(b), that dismissal isn't
16    required to be either immediate or unconditional.
17    Courts have long recognized the authority at minimum
18    under Section 349(a) of the Bankruptcy Code to impose
19    strings on the dismissal to prevent abuse, and
20    address bad faith conduct which the court has already
21    found to exist.
22              Accordingly, this case will be dismissed as
23    requested by both Mr. Lopez and Auntie Tut, but the
24    dismissal will not be entered until after entry of
25    the stay of relief order.
```

1 So Mr. Sink, I'm going to ask you to prepare
2 the order granting relief from stay under Section
3 362(d)(1) and (d)(4). And once that has been
4 entered, the court will enter its own motion
5 dismissing the case.
6 MR. SINK: Understood, Your Honor. Thank
7 you. I would make one correction to the record that
8 you just read in. You referred to the immediate case
9 as a Chapter 7 case and I would just say that it was
10 a Chapter 13 case not the Chapter 7.
11 THE COURT: Thank you. Anything else?
12 MR. SINK: Thank you, Your Honor. I'll
13 prepare that order and I'll upload it. Do you want
14 me to circulate that order to the e-mail that I have
15 for Mr. Lopez?
16 THE COURT: He hasn't appeared here today
17 and I'll be sure to review the order so that it
18 correctly reflects my ruling.
19 MR. SINK: Okay. Thank you, Your Honor,
20 I'll get that submitted in the next day or two.
21 THE COURT: All right. Thank you. The
22 court's in recess.
23 MR. DARGER: Your Honor, so you did grant my
24 order to intervene, correct?
25 THE COURT: I'm sorry, who is speaking?

```
 1              MR. DARGER:  This is John Darger.
 2              THE COURT:  Mr. Darger, I haven't seen any
 3    motion.
 4              THE CLERK:  They were filed with the court
 5    at 2:03 p.m.  They're not on the docket but in user
 6    file sharing.
 7              THE COURT:  The court's in recess.  Thank
 8    you.
 9              (Hearing concluded.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1   REPORTER'S CERTIFICATION

3   I hereby certify that the foregoing
4   transcript was taken from a tape recording
5   stenographically to the best of my ability to hear
6   and understand said tape recording, that my said
7   stenographic notes were thereafter transcribed into
8   typewriting at my direction.
9   Dated this 14th day of February, 2025.

12   ___*Laura W. Robinson*_____
13   Laura W. Robinson